**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **SAUDER MANUFACTURING CO.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JSQUARED, INC. d/b/a UNIVERSITY LOFT COMPANY,**<br><br>**Defendant.** | **CASE NO.: 3:14-cv-00962-JZ**<br><br>**JUDGE JACK ZOUHARY**<br><br>**MAGISTRATE JUDGE JAMES R. KNEPP, II**<br><br>**DEFENDANT J SQUARED, INC. d/b/a UNIVERSITY LOFT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

In accordance with Fed. R. Civ. P. 56, Defendant/counterclaim-plaintiff J Squared, Inc. d/b/a University Loft Company ("ULC") respectfully moves the Court for partial summary judgment on **Count VII of its Counterclaim**. In Count VII, ULC seeks a declaration of invalidity and unenforceability of the patents at issue in this lawsuit—U.S. Patent No. 8,585,136 ("the '136 Patent") and U.S. Patent No. 8,960,787 ("the '787 Patent")(the '136 Patent and the '787 Patent collectively, the "Patents-in-suit")—due to inequitable conduct on the part of plaintiff/counterclaim-defendant Sauder Manufacturing Co. ("Sauder") and its lawyers while prosecuting the Patents-in-suit's parent patent, U.S. Patent No. 8,083,288 ("the '288 Patent").

As described in detail in the attached Memorandum in Support and Exhibits, no genuine issue of material fact exists as to Sauder's inequitable conduct while reviving U.S. Patent Application Serial No. 11/877,478 ("the '478 Application") prior to its issuance as the '288 Patent. Sauder failed to timely respond to an office action from the United States Patent and Trademark Office (USPTO), which resulted in the '478 Application's abandonment. After repeated, intentional delays on its part and on the part of its lawyers, Sauder finally submitted its office action response while petitioning to revive the '478 Application. In so doing, Sauder,

through its lawyers, falsely certified to the USPTO that its untimely office action response was due to "unintentional delay," knowing that this was not the case. As a matter of law, this false certification constitutes inequitable conduct on the part of Sauder and its lawyers. As a result, the '288 Patent and its child patents—the Patents-in-suit—are each invalid and unenforceable as a matter of law.

Respectfully submitted:

/s/ Williams A. Doyle
Philip R. Bautista (0073272)
pbautista@taftlaw.com
William A. Doyle (0090987)
wdoyle@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Tel: (216) 241-2838
Fax: (216) 241-3707

Thomas R. DeVoe*
Chou-il Lee*
tdevoe@taftlaw.com
clee@taftlaw.com
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Tel: (317) 713-3500
Fax: (317) 713-3699

William F. Bahret*
bbahret@bahretlaw.com
Bahret & Associates, LLC
320 N. Meridian Street, Suite 510
Indianapolis, IN 46204
Tel: (317) 423-2300
Fax: (317) 423-3063
*Admitted pro hac vice
*Attorneys for defendant/counterclaim-plaintiff*

**MEMORANDUM IN SUPPORT OF DEFENDANT J SQUARED, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Sauder Manufacturing Co. ("Sauder") waited an entire year after the "due date" to file its response ("Response") to an office action dated July 6, 2009 ("Office Action") issued by the US Patent and Trademark Office ("USPTO") in connection with Patent Application No. 11/877,478 ("'478 Application").[1] Contemporaneously with the Response, Sauder also filed a petition to revive the '478 Application ("Petition") after it became abandoned due to Sauder's failure to timely respond to the Office Action. During that one-year delay, Sauder and its patent lawyers (whose conduct is imputed to Sauder) intentionally and repeatedly delayed, for long stretches of time, working on the Response.

To revive an abandoned patent application, a patent applicant cannot engage in **any intentional delay** in filing the revival petition. Accordingly, to revive the '478 Application, Sauder was required to certify to the USPTO that the **entire delay** in filing the Response after its **due date** was **unintentional**. While Sauder's counsel so certified in order to obtain a revival, that certification was demonstrably false. Sauder's misrepresentation and false certification is precisely the kind of conduct that rises to the level of "inequitable conduct" that now bars enforcement of the '288 Patent and its continuation patents at issue in this lawsuit, the '136 Patent and the '787 Patent. Accordingly, Defendant J. Squared d/b/a University Loft Company ("ULC") respectfully requests that the Court declare unenforceable the '136 Patent and the '787 Patent and grant summary judgment on Count VII of its Counterclaims.

---

[1] The '478 Application eventually issued into U.S. Patent No. 8,083,288 ("'288 Patent"), which is in turn the parent patent of the two utility patents at issue in this lawsuit, *i.e.*, U.S. Patent No. 8,585,136 ("'136 Patent") and U.S. Patent No. 8,960,787 ("'787 Patent").

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[2]

### A. The Varnum and Sauder Personnel Involved in Preparing and Filing the Response.

The law firm of Varnum, Riddering, Schmidt & Howlett LLP ("Varnum"), a well-established Michigan-based patent law firm, has represented Sauder on patent matters for many years, both before and after the Petition was filed. (Lockhart Dep. 28:3-10). Specifically, Sauder engaged Varnum to prosecute the '478 Application, which resulted in the issuance of the '288 Patent. (Eagle Dep. 17:15-18:8). Several experienced patent lawyers and personnel were assigned to the '478 Application, including Thomas Lockhart ("Lockhart") (patent lawyer), Timothy Eagle ("Eagle") (patent lawyer), Jodi Russo ("Russo") (paralegal), and Courtney Lapekes ("Lapekes") (legal assistant). (Lockhart Dep. 17:19-20; Eagle Dep. 10:22-23; Russo Dep 12:8-22; Lapekes Dep. 8:11-9:2). Lockhart and Eagle were admitted to practice before the USPTO. (Lockhart Dep. 20:20-25; Eagle Dep. 10:7-14).

[redacted]

### B. The One-Year Delay in Filing the Response.

On July 6, 2009, the USPTO issued to Sauder an Office Action rejecting various claims in the '478 Application. (Lockhart Dep. Ex. 7). The Office Action identified a mail date of July

---

[2] The following facts are supported by appropriate citations to depositions, deposition exhibits, and other admissible evidence as to which ULC contends there are no material issues.

6, 2009 (the "Mail Date") and contained a one-page Office Action Summary consisting, in part, as follows:

> **Period for Reply**
> A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
> - Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication. . . .
> - Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

(*Id*.) (emphasis in original).

Pursuant to the Office Action, Sauder had three months from the Mail Date to file a response or three more months – up until January 6, 2010 – if it requested an extension of time. Sauder did not request an extension of time, so its response was due **October 6, 2009** (the "Due Date"). As stated in the Office Action Summary, failure to respond by the Due Date would, by statute, cause the abandonment of the '478 Application. (*Id.*).

In order to track patent prosecution deadlines, Varnum utilized a docketing system called PATTSY. (Lapekes Dep. 9:16-11:19). PATTSY generated a report and docket for each open patent application, including the '478 Application. (Russo Dep. 22:11-23:2). The Office Action was docketed by Varnum in PATTSY with a base date of July 6, 2009, which corresponds to the Mail Date of the Office Action. (Lockhart Dep. Ex. 2). The docket for the '478 Application was reviewed on a weekly basis at meetings attended by Varnum's entire intellectual property (IP) group, including Lockhart. (Russo Dep. 37:21-38:16). From the date of the Office Action (July 6, 2009) to the filing of the Petition (October 6, 2010), there were dozens of weekly meetings with the entire IP group involving the Response. (*Id*. 40:22-41:13).

[redacted]

[redacted]

[redacted] Sauder failed to file any response to the Office Action with the USPTO by the October 6, 2009 Due Date or by the latest possible extension date of January 6, 2010, and as a result, the '478 Application became abandoned as of **October 7, 2009**. This was confirmed in a Notice of Abandonment sent by the USPTO to Varnum on February 23, 2010 ("Notice of Abandonment"). [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**C. The Certification that the Entire Delay from the Due Date was Unintentional.**

Finally, exactly one year after the October 7, 2009 date of abandonment, Varnum and Lockhart filed, on Sauder's behalf, the Response and Petition with the USPTO on October 7,

3 [redacted]

2010. (Lockhart Dep. Ex. 14; Lapekes Dep. 40:14-41:13). The Petition included a legally-required certification signed by Lockhart that "[t]he entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 C.F.R. § 1.137(b) was unintentional." (Lockhart. Dep. Ex. 14).

Filing the Petition to revive the '478 Application was not the first or last time Varnum (and Lockhart in particular) filed a petition to revive a Sauder patent application after Sauder had failed to respond to a USPTO official communication by its due date. More particularly, in 2009 and 2014, Varnum and Lockhart also filed petitions to revive abandoned Sauder patent applications.[4] After the Petition was filed in October 2010, Sauder also continued to use Varnum, and Lockhart in particular, as its patent counsel responsible for prosecuting patents and responding to office actions on numerous patents through at least 2015.

Prior to this lawsuit, in February 2012, in a letter from ULC's counsel to Varnum, ULC notified Sauder of the "unintentional delay" issue, stating: "Also keep in mind the obligation to retain evidence, e.g., evidence relevant to the allegedly unintentional abandonment of, and 1-year delay in filing a petition to revive, the application that matured into the '288 patent."

## III. LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v.*

[4] These patent file wrappers are publicly accessible on the USPTO's Public Pair Database. The first record can be found by accessing (i) http://portal.uspto.gov/pair/PublicPair (ii) selecting "application number," (iii) inputting 29250908, (iv) clicking the tab "image file wrapper," and (v) reviewing all documents docketed on 9/4/2009. The second record can be found by accessing (i) http://portal.uspto.gov/pair/PublicPair (ii) selecting "application number," (iii) inputting 12/907,682, (iv) clicking the tab "image file wrapper," and (v) reviewing all documents docketed at 10/17/2014.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1370 (Fed. Cir. 2007).

"Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.* 911 F.2d 670, 672 (Fed. Cir. 1990). Moreover, granting summary judgment that a patent is unenforceable for inequitable conduct is appropriate in certain cases. *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1187-90 (Fed. Cir. 1993) (affirming grant of summary judgment of inequitable conduct); *see also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1187 (Fed. Cir. 2006) (same).

**B. A Patent is Unenforceable if Obtained Through "Inequitable Conduct."**

A party that obtains a patent through "inequitable conduct" is barred from enforcing its patent, which is deemed unenforceable. *See e.g., Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The doctrine of inequitable conduct applies in instances where a patent owner fails to disclose material information or submits materially false information during the patent prosecution process, with the intent to deceive the USPTO into issuing the patent. *See e.g., Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 1001 (Fed. Cir. 2006). More particularly, this doctrine applies when a patent owner or its lawyer misrepresents material facts to mislead the USPTO into reviving a patent application. *See, e.g., 3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, Case No. 2:14-CV-267-RWS, 2017 WL 106018, at *5 (N.D. Ga. Jan. 11, 2017) (granting summary judgment against patent holder and concluding that patent holder's misrepresentation to the USPTO of unintentional delay in reviving a patent

application constituted inequitable conduct); *see also Dura Operating Corp. v. Magna Intern.*, No. 11-11566, 2011 WL 869372, at *3 (E.D. Mich. Mar. 10, 2011).

Moreover, if a patent is deemed unenforceable due to inequitable conduct, then the continuation patents related to the patent are also deemed unenforceable. *See Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.,* 901 F. Supp. 718, 729 (S.D.N.Y.1995) (finding a second patent, which was continuation of a patent that the court found unenforceable for inequitable conduct, was also rendered unenforceable); *Molins PLC v. Textron, Inc.*, 821 F. Supp. 1551, 1581 (D.Del.1992), *aff'd in part, vacated in part and remanded,* 48 F.3d 1172 (Fed.Cir.1995).

As explained below, and based upon the undisputed facts above, Sauder engaged in inequitable conduct in reviving the '478 Application, thereby rendering the '288 Patent and its continuation patents, the '136 Patent and the '787 Patent, unenforceable.

## C. Sauder Engaged in Inequitable Conduct by Misrepresenting to the USPTO that its Delay in Responding to the Office Action was "Unintentional".

### 1. Both Sauder and Varnum Contributed to Intentional Delay in the Preparing and Filing the Response.

As provided in the applicable regulations and as stated in USPTO office actions, in order to revive an abandoned patent application, a patent applicant must certify to the USPTO that the **entire** delay in responding to the office action after the response due date was unintentional. *See* 37 C.F.R. § 1.137(b); Lockhart Dep. Ex. 7. "[T]he plain meaning of the word 'entire' here is that revival may not be granted where a party intentionally delays seeking revival for even a few weeks." *New York University v. Autodesk,* 495 F. Supp. 2d 369 (S.D.N.Y. 2007); *see also, In re Application Stinnett,* Application No. 08/376,702, Paper No. 15, pp. 1–2 (Comm'r Pat. July 1, 1999) (concluding that the USPTO has long and consistently held that an inordinate delay – e.g.,

a delay of nine months - in seeking revival of a patent application resulting from a decision to use the revival procedures as an extension of time does not constitute an "unintentional" delay within the meaning of the regulations).

The issue is not whether there exists an intent to abandon the patent application, but rather whether there was any deliberate or intentional delay in responding to the office action. *See Field Hybrids, LLC v. Toyota Motor Corp.*, 2005 U.S. Dist. LEXIS 1159, at *7 (D. Minn. Jan. 27, 2005) ("As the [Manual of Patent Examining Procedure] clarifies, whether one intends to abandon an application is irrelevant. The pertinent inquiry, rather, is whether the delay was intentional. Thus, a course of conduct resulting in delay that is purposefully chosen does not qualify as an unintentional delay.").

Furthermore, an intentional course of conduct by the patent owner or its lawyer that happens to result in delay constitutes intentional delay. *See Field Hybrids, LLC*, 2005 U.S. Dist. LEXIS 1159, at *19-21 ("[a] course of conduct resulting in delay that is purposefully chosen does not qualify as an unintentional delay.") Similarly, deciding to work on, or being preoccupied with, other matters that are a priority over a revival petition also does not qualify as unintentional delay. *See, e.g., Smith v. Mossinghoff*, 671 F. 2d 533, 538, 213 USPQ 977, 982 (D.C. Cir. 1982).

The undisputed evidence is that Sauder and Varnum did virtually nothing to respond to the Office Action from July 2009 to December 2009. Sauder and Varnum did not even bother to request a three-month extension of the due date. [redacted]

[redacted]

Even then, the matter dragged on for months, as Sauder and Varnum each delayed the project. Despite knowing in December 2009 that they needed to file the Response as soon as reasonably practical, Warncke [redacted]

All of the foregoing evidence indisputably demonstrates that Sauder, with Varnum's contribution, intentionally delayed filing the Response - directly contrary to its certification that its delay was entirely "unintentional."

**2. Sauder's Misrepresentation of Unintentional Delay was "Material" Because, Without It, Sauder Could Not Have Revived the Application.**

To revive an abandoned application, the USPTO regulations expressly require a petition for acceptance of a late reply to include "[a] statement that the entire delay in filing the required

---

[5] Patent applicants were previously given a one-year period to file a petition to revive; however, 37 C.F.R. § 1.137(b) was amended in 1997 to eliminate the one-year filing period requirement. *See* Changes to Patent Practice and Procedure, Final Rule Notice, 62 Fed. Reg. 53131, 53157-63, 53194-95 (Oct. 10, 1997), 1203 Off. Gaz. Pat. Office 63, 85-90, 119-20 (Oct. 21, 1997). Despite this change, there are cases where practitioners continued to docket the one-year response period as an "administrative bar" by which their revival petition must be filed. However, the USPTO has long held that using the former one-year filing period as an "extension of time" is an "abuse" of the procedures for reviving an abandoned application, and as a result, precludes the revival of the abandoned application under 37 CFR 1.137(a) or (b). *See In re Application of S*, 8 USPQ2d 1630, 1632 (Comm'r Pats. 1988).

reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional..” 37 C.F.R. § 1.137(b)(4). “Materiality” exists when “the PTO would not have allowed the claim but for the nondisclosure or misrepresentation.” *3D Medical Imaging Systems*, Case No. 2:14-cv-00267, 2017 WL 106018, at *5-6 (granting summary judgment to party asserting inequitable conduct and concluding that a false certification to the USPTO of unintentional delay is “material” because such certification is required to revive an abandoned patent). Accordingly, Sauder’s false certification of unintentional delay was undeniably material to the USPTO’s decision to revive the ‘478 Application.

### 3. Sauder’s Misrepresentation of Unintentional Delay was Made to Deceive the USPTO.

On behalf of Sauder, and with intent to deceive the USPTO, Varnum falsely certified to the USPTO that the entire delay responding to the Office Action was unintentional.[6] Because direct evidence of the “deceptive intent” required to provide inequitable conduct is rare, a district court may infer the intent from indirect and circumstantial evidence. *See, e.g., Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, Case No. 10-805-RGA (D. Del. Jul. 19, 2012); *see 3D Medical Imaging Systems*, Case No. 2:14-cv-00267, 2017 WL 106018, at *5-6 (granting summary judgment to party asserting inequitable conduct and concluding that the single most reasonable inference drawn from the petitioner’s misrepresentation of unintentional delay was that it was made with specific intent to deceive the USPTO).

In *3D Medical Imaging Systems*, the Court granted summary judgment against petitioner, finding inequitable conduct in the petitioner’s misrepresentation of unintentional delay to the

[6] Any attempt by Sauder to argue that it should not be bound by Varnum’s certification of unintentional delay to the USPTO is meritless. As discussed below, Sauder, an experienced patent holder, selected Varnum to represent it before the USPTO and therefore Varnum’s statements to the USPTO are binding on and imputed to Sauder.

USPTO. The court found that even if petitioner believed before filing the petition to revive that he could reinstate the patent based only on the facts as he then understood them, the language in the statement certifying that the delay was unintentional should have given him pause. However, since he proceeded with the petition nonetheless and made a representation that he could not support, the Court found the single most reasonable inference that could be drawn from that evidence was that the misrepresentation was made with the specific intent to deceive the USPTO. *3D Medical Imaging Systems*, Case No. 2:14-cv-00267, 2017 WL 106018, at *5-6

Based on the holding of *3D Medical Imaging Systems*, [redacted]

### 4. As Sauder's Attorneys, Varnum's and Lockhart's False Certification of "Unintentional Delay" is Imputed to Sauder.

As described above, Sauder's patent prosecution lawyers before, during, and after the prosecution of the '478 Application was Varnum and Lockhart, and the Federal Circuit, district

---

[7] It should be noted Lockhart, an experienced patent lawyer, was familiar with the petition to revive process, as the revival of the '478 Application was not the first time Lockhart had filed a petition to revive an abandoned application on Sauder's behalf. [redacted]

courts, and the USPTO have all held that a patent attorney's actions in the course of filing a patent application are imputed to the client. *See, e.g. Argus Chem. Corp. v. Fibre Glass-Evercoat Co.,* 759 F.2d 10, 14-15 (Fed. Cir. 1985); *Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.,* 93 F.Supp.2d 1255, 1260 (S.D. Ga. 1999) (discussing that a patentee's failure to appreciate the legal significance of undisclosed facts that, if disclosed, would have prevented the issuance of its patent does not avoid inequitable conduct due to its counsel and that its counsel's knowledge is imputed to the patentee); *Quikrete Companies, Inc. v. Nomix Corp*., 874 F. Supp. 1362, 1367 (N.D. Ga. 1993), *aff'd,* 34 F.3d 1078 (Fed. Cir. 1994) (stating that "one way to prove [inequitable conduct] is to show that the inventor **or** his attorney *intentionally* withheld *material* information from the PTO.") (emphasis added) (*citing J.P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1560, 1089 (Fed.Cir.1984)). *Accord*, *In re Patent No. 4,496,886*, 1998 WL 35180901 at *5 (Comm'r Pat. Jul. 6, 1998) (stating "the United States Patent and Trademark Office must rely on the actions or inactions of duly authorized and voluntarily chosen representatives of the patent holder, and petitioner is bound by the consequences of those actions or inactions."). In fact, an attorney's actions in connection with the abandonment of a patent application and any consequences from those actions are imputed to the client - even if the client was unaware of this abandonment. *Autodesk,* 495 F. Supp. 2d at 374 (finding that patentee was bound by its attorney's abandonment of its patent despite being unaware of the patent application's abandoned status).

Applying this clear authority to Sauder's prosecution of the '478 Application, Varnum's and Lockhart's false certification of "unintentional delay" in the filing of the Response is now imputed to Sauder. Sauder readily accepted the benefits of this false certification of "unintentional delay" and, indeed, must now face the consequences its lawyers'

misrepresentations - a finding of inequitable conduct on its part. As a result, the ‘288 Patent, the ‘136 Patent, and the ‘787 Patent are all unenforceable and ULC’s partial motion for summary judgment should be granted.

## IV. CONCLUSION

No genuine issue of material facts exists as to Sauder’s inequitable conduct in reviving the Application. For the foregoing reasons, ULC respectfully requests the Court to grant ULC’s contemporaneously-filed Motion for Partial Summary Judgment on Count VII of its Counterclaim. Accordingly, the ‘288 Patent, the ‘136 Patent, and the ‘787 Patent should be deemed unenforceable as a matter of law.

Respectfully submitted,
/s/ William A. Doyle

Philip R. Bautista (0073272)
pbautista@taftlaw.com
William A. Doyle (0090987)
wdoyle@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Tel: (216) 241-2838; Fax: (216) 241-3707

Thomas R. DeVoe (16688-49) *
tdevoe@taftlaw.com
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Tel: (317) 713-3500; Fax: (317) 713-3699

William F. Bahret (4009-49) *
bbahret@bahretlaw.com
Bahret & Associates, LLC
320 N. Meridian Street, Suite 510
Indianapolis, IN 46204
Tel: (317) 423-2300; Fax: (317) 423-3063

Attorneys for Defendant/Counterclaim Plaintiff
*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 10, 2017, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William A. Doyle
William A. Doyle (0090987)
wdoyle@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
(216) 241-2838
(216) 241-3707 (facsimile)

Attorney for Defendant/Counterclaim-Plaintiff

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)**

Above-signed counsel certifies that this case is a standard track case and this Memorandum in Support of Motion for Summary Judgment adheres to the page limitations set forth in this section. 7.1(f).