UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAUDER MANUFACTURING
COMPANY,

    Plaintiff,

v.

J SQUARED, INC. d/b/a UNIVERSITY
LOFT COMPANY,

    Defendant.

Case No. 3:14-cv-00962-JZ
Hon. Jack Zouhary, U.S. District Judge
Magistrate Judge James R. Knepp, II

---

**Timothy E. Eagle (0037972)**
Varnum LLP
*Attorneys for Plaintiff*
P. O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000 / (616) 337-7000
teeagle@varnumlaw.com

**Thomas N. Young (P22656)**
**Michael M. Jacob (P15391)**
Young Basile Hanlon & MacFarlane, PC
*Attorneys for Plaintiff*
3001 W. Big Beaver Road, Suite 624
Troy, MI 48084
(248) 619-3333 / (248) 649-3338
young@youngbasile.com
jacob@youngbasile.com

**William F. Bahret (4009-49)**
Bahret & Associates, LLC
*Attorney for Defendant*
320 N. Meridian Street, Suite 510
Indianapolis, IN 46204
(317) 423-2300 / (317) 423-3063
bbahret@bahretlaw.com

**Philip R. Bautista (0073272)**
Taft Stettinius & Hollister
*Attorneys for Defendant*
200 Public Square, Suite 3500
Cleveland, OH 44114
(216) 241-2838 / (216) 241-37072
pbautista@taftlaw.com

**Thomas R. DeVoe (16688-49)**
Taft Stettinius & Hollister, LLP
*Attorney for Defendant*
One Indiana Square, Suite 3500
Indianapolis, IN 46204200
(317) 713-3500 / (317) 713-3699
tdevoe@taftlaw.com

---

**PLAINTIFF SAUDER MANUFACTURING COMPANY'S
BRIEF IN RESPONSE TO DEFENDANT J SQUARED, INC.'s
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. Introduction ...................................................................................................................1

II. Defendant Has Failed to Acknowledge the Relevant Legal
Standard and Prove its Case According to that Standard .........................................1

III. Defendant Relies on Exaggerations, Inferences and
Outright Misstatements of Fact..................................................................................2

IV. Defendant Relies Upon Outdated and Inapposite Law............................................4

V. Varnum's Negligence Cannot be Imputed to Sauder ...............................................8

VI. Conclusion ................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*,
   No. 2:14-CV-267-RWS, --- F.Supp.3d ---, 2017 WL 106018 (N.D. Ga. Jan. 11, 2017) ................................................................................................................. 7, 8

*Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*,
   543 F.3d 657 (Fed. Cir. 2008) ............................................................................................. 6

*Aristocrat Techs. v. Int'l Game Tech.*,
   2011 WL 10934530 (N.D. Cal. 2011) ................................................................................. 9

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
   605 F.3d 1305, 1316 (Fed. Cir. 2010) ................................................................................. 2

*Exela Pharma Scis., LLC v. Lee*,
   781 F.3d 1349 (Fed. Cir. 2015) (Newman, J., concurring) ................................................. 6

*Field Hybrids, LLC v. Toyota Motor Corp.*,
   2005 U.S. Dist. LEXIS 1159 (D. Minn. Jan. 27, 2005) ................................................... 5, 6

*In re Nat'l Century Fin. Enterprises, Inc.*,
   783 F. Supp. 2d 1003 (S.D. Ohio 2011) ............................................................................. 9

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   731 F.3d 1239 (Fed. Cir. 2013) .................................................................................. 5, 7, 8

*New Properties, Inc. v. George D. Newpower, Jr., Inc.*,
   762 N.W.2d 178 (Mich. Ct. App. 2009) ............................................................................. 9

*New York University v. Autodesk*,
   495 F. Supp. 2d 369 (S.D.N.Y. 2007) ............................................................................. 5, 7

*Pellenz v. Knights of Columbus*,
   147 Mich. App. 438, 382 N.W.2d 793 (1985) ................................................................... 9

*Smith v. Mossinghoff*,
   671 F. 2d 533, 213 USPQ 977 (D.C. Cir. 1982) ............................................................. 5, 7

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008) ........................................................................................... 2

*Unencumbered Assets, Trust v. Great Am. Ins. Co.*,
   817 F. Supp. 2d 1014 (S.D. Ohio 2011) ............................................................................. 9

I. **INTRODUCTION**

In a last resort attempt to block the enforcement of Sauder's utility patents against Defendant's blatant and continuing acts of patent infringement, Defendant seeks to prove that the patents were obtained through "inequitable conduct" but relies entirely upon (a) innuendo and circumstantial evidence that does not rise to the clear and convincing standard, (b) strained inferences that are negated by Sauder's cogent unequivocal and directly pertinent fact testimony from informed witnesses, and (c) outdated and irrelevant law. (DE 136, the "Motion").

The evidence presented by Sauder shows that the temporary hiatus in the pendency of Sauder's original utility patent application was due entirely to human factors amounting to excusable neglect, had no prejudicial effect on Defendant, and was fully and properly cured by a form petition that truthfully represented the abandonment as "unintentional," which Petition was duly granted by the Patent and Trademark Office. (DE 134, "Plaintiff's Brief")

Defendant has now had its "day in court" on this matter and has failed to provide evidence of inequitable conduct attributable to Sauder by clear and convincing evidence. Plaintiff's Motion for Judgment on the defense of inequitable conduct should be granted and Defendant's Motion should be denied.

II. **DEFENDANT HAS FAILED TO ACKNOWLEDGE THE RELEVANT LEGAL STANDARD AND PROVE ITS CASE ACCORDING TO THAT STANDARD**

Plaintiff explained in its Brief that all components to the inequitable conduct allegation must be proven by clear and convincing evidence. *See, e.g.*, Plaintiff's Brief at p. 6 (*citing Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008); Plaintiff's Motion at p. 7 (*citing Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1316 (Fed. Cir. 2010)); Plaintiff's Brief at p. 8 (*citing Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013)). Defendant must prove both materiality and intent to deceive the

1

USPTO by evidence meeting this standard. *See Star Sci., Inc.,* 537 F.3d at 1365. Defendant failed to acknowledge this standard in its brief and has not met this standard as explained in Plaintiff's Brief and below.

**III.    DEFENDANT RELIES ON EXAGGERATIONS, INFERENCES AND OUTRIGHT MISSTATEMENTS OF FACT**

Defendant's Motion relies on multiple factual assertions that are overstated or just plain wrong:

- Defendant alleges that four Varnum employees were involved with the prosecution of the relevant Application (Lockhart, Eagle, Russo, and Lapekes). Motion at p. 2. The fact is, only Attorney Lockhart and his secretary, Courtney Lapekes were directly involved with the prosecution of the Application. Eagle Dep. at p. 13:13-16 (patent prosecution comprises "very, very little" of Eagle's practice); Eagle Dep. at p. 17:3-18:16 (Eagle was involved only with sending communications related to the application); Russo Dep. at p. 13:12-14-11; 35:2-15 (Russo was the international and trademark paralegal, and so she had little to no dealing with domestic patent applications until after Ms. Lapekes left Varnum); Lapekes Dep. at p. 8:20-21 (Lapekes was employed at Varnum until 2013).

- Defendant asserts that Sauder employee Warncke "worked closely with outside patent counsel and was knowledgeable about the patent application process, including timing requirements, and had experience responding to office actions issued by the USPTO." Motion at p. 2 (*citing* Warncke Dep. at 36:1-12; 44:20-46:17; 49:4-21). A cursory review of the cited passages reveals, however, that Defendant is overstating Warncke's familiarity with USPTO procedures. The most that can be said is that Warncke had some familiarity with the prosecution process, a process that is so occult that the Patent Office itself strongly urges inventors not to attempt to wade through it without the assistance of a registered

2

patent attorney. And as Sauder explained in its own Motion, Warncke trusted Lockhart to maneuver the process and take the appropriate actions. Plaintiff's Motion at 4 (*citing* Warncke Dep. at 103; 114; 121-122; Lockhart Decl. at ¶ 20).

- Defendant asserts that Lockhart attended the weekly docketing meetings at Varnum. Motion at 3. This contradicts the clear deposition testimony of Lapekes at p. 60:7-10 (Lapekes indicates that she was sure that Lockhart missed docketing meetings), and the Declaration testimony of Lockhart himself indicating hospital stays and reduced working hours. Lockhart Decl. at ¶¶ 12-17.

- Defendant discusses the July 6, 2009 Office Action, but fails to mention that it was sent to Warncke some five months after it was issued; Motion at p. 4; Plaintiff's Motion at p. 2 (*citing* Lockhart Dep. at 65 – 70; Ex. G; Lockhart Decl. at ¶ 8). In sending it to Warncke, Lockhart gave Warncke and incorrect response date. Plaintiff's Motion at p. 2 (*citing* Lockhart Dep. at 65–70; Ex. G; Lockhart Decl. at ¶ 8).

- Defendant asserts that there is a cause/effect relationship between the February 23, 2010 Notice of Abandonment and the email correspondence between Lockhart and Warncke. Motion at p. 5, implying that the Notice spurred Varnum and Sauder to action with respect to prosecution of the Application. There is, however, clear *evidence* that Sauder did not even know about the Notice until long after the Application had been revived and the patent granted. See, Plaintiff's Motion at p. 2 (*citing* Lockhart Decl. at ¶ 9, 18-19).

- Defendant cherry-picks the evidence while omitting the relevant context. Motion at p. 5. For example, Defendant interprets an email exchange between Lockhart and Warncke, wherein Warncke indicates that the "trail" had "gone cold" for him to imply that Warncke intended to ignore the Application. Motion at 5 (*quoting* Lockhart Dep. Ex. 12). When

3

- questioned about this in deposition, however, Mr. Warncke testified that he simply meant that he would need time to reacquaint himself with the minutiae of the issues and that he "never" intended to abandon the Application. Warncke Dep. at p. 112:5-16; 124:8-125:7; 139:19140:25; Lockhart Decl. at ¶ 20.

- Defendant reads a May 2010 email from Eagle to Warncke advising Warncke that the first week in June would be the best time for Warncke to get back to Lockhart on the Application to imply that Varnum and Warncke, for some unstated reason, intentionally delayed prosecution of the Application. Motion at p. 6. As Sauder explained in its Motion, however, Lockhart was on medical leave at this time and did not return to work until June 2010, and only then, on a limited basis. Plaintiff's Motion at 3 (*citing* Lockhart Decl. at ¶ 17) ("Lockhart returned to work in June 2010 on a limited basis, and was extremely fatigued for the remainder of 2010.").

These inferences must be compared to the direct and unequivocal deposition testimony of both Lockhart and Warncke that there was <u>never</u> an intent to abandon the Application. *See* Warncke Dep. at p. 139:19140:25; Lockhart Dep. at p. 119:19-120:4; see generally Lockhart Declaration (discussing the circumstances resulting in the abandonment). Disregarding these mischaracterizations and viewing them in context of the evidence presented in Plaintiff's Motion against the applicable legal standard (clear and convincing evidence), it is obvious that the abandonment of the Application was unintentional and the result of excusable neglect on behalf of Sauder's counsel.

## IV. DEFENDANT RELIES UPON OUTDATED AND INAPPOSITE LAW

A certification of "unintentional delay" under 37 C.F.R. 1.137(b) does not require the patent holder to account for each moment of the delay to establish that it was unintentional.

Defendant cites numerous cases in its Motion to stand for the proposition that "The issue is not whether there exists an intent to abandon the patent application, but rather whether there was any deliberate or intentional delay in responding to the office action." Motion at 9-10 (analyzing, among other cases *Field Hybrids, LLC v. Toyota Motor Corp.*, 2005 U.S. Dist. LEXIS 1159, at *7 (D. Minn. Jan. 27, 2005); *Smith v. Mossinghoff*, 671 F. 2d 533, 538, 213 USPQ 977, 982 (D.C. Cir. 1982); *New York University v. Autodesk,* 495 F. Supp. 2d 369 (S.D.N.Y. 2007)). But it is questionable, however, whether this "rule," to the extent even valid law, survived the Federal Circuit's ruling in *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013).

In *Network Signatures*, the patent holder **intentionally** decided not to pay a maintenance fee based on a mistaken belief that there was no commercial value to its patent. The patent lapsed, but was later revived on the basis that the lapse was "unintentional." The Federal Circuit nonetheless declined to find inequitable conduct on the assertion that the lapse was "unintentional." Plaintiff's Motion at p. 9. The holding in *Network Signatures,* then, is clearly at odds with the "rule" espoused by Defendant, and thus, it is dubious that this "rule" is still good law. Moreover, the idea that delay becomes "intentional" at some point implies motive, and Sauder has already explained that no evidence of motive has been presented. *See generally* Plaintiff's Brief at 9 (arguing that an inference of motive is difficult to find in light of the fact that the Application contained eight allowed and four more essentially-allowed claims).

As Sauder explained in its Motion, the alleged inequitable conduct in this case related not to **substantive patentability** (e.g., failing to disclose material prior art), but instead, a **procedural irregularity**. Plaintiff's Brief at 12-13. The Federal Circuit has intimated on numerous occasions that courts should be more concerned with those in the former category rather than the latter. As

5

Plaintiff cited in its Motion, "it is almost surely preferable for a reviewing court not to involve itself in the minutiae of Patent Office proceedings and to second-guess the Patent Office on procedural issues at every turn." Plaintiff's Brief at 10 *(quoting Network Signatures, Inc.*, 731 F.3d at 1243). In *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech*., 543 F.3d 657, 663 (Fed. Cir. 2008) (*quoting Magnivision, Inc. v. Bonneau Co.,* 115 F.3d 956 (Fed.Cir.1997)), the Federal Circuit restricted the defense of "improper revival" to inequitable conduct claims: "[p]rocedural lapses during examination, should they occur, do not provide grounds of invalidity. Absent proof of inequitable conduct, the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *See also Exela Pharma Scis., LLC v. Lee,* 781 F.3d 1349, 1354 (Fed. Cir. 2015) (Newman, J., concurring) (discussing antitrust laws as a defense to patent infringement: "***If judges cannot easily distinguish the significance of antitrust violation from a missed date, we must try harder***.") (emphasis added).

There is good reason to not put much stock into procedural irregularities during prosecution to provide a basis for invalidity. "Once a patent has issued, the procedural minutiae of prosecution have little relevance to the metes and bounds of the patentee's right to exclude. If any prosecution irregularity or procedural lapse, however minor, became grist for a later assertion of invalidity, accused infringers would inundate the courts with arguments relating to every minor transgression they could comb from the file wrapper. This deluge would only detract focus from the important legal issues to be resolved—primarily, infringement and invalidity." *Aristocrat Techs. Australia PTY Ltd*., 543 F.3d at 663. Plaintiff echoed this concern in its Motion. *See* Plaintiff's Brief at 5-7 (explaining that claims of inequitable conduct are an absolute "plague" upon the court system).

In any event, Defendant's proffered cases are not even factually analogous to the case at bar. For example, in *Field Hybrids, LLC v. Toyota Motor Corp*., 2005 U.S. Dist. LEXIS 1159, at

6

*7 (D. Minn. Jan. 27, 2005), the patent applicant and counsel *knew* its application was in danger of abandonment, but nonetheless abandoned the application due to an ongoing fee dispute. In *New York University v. Autodesk,* 495 F. Supp. 2d 369 (S.D.N.Y. 2007), both party and counsel were aware of the deadlines at issue, and counsel even *confirmed* to the USPTO that it intended to abandon the application at issue before subsequent counsel sought to revive the application. Similarly, the *Smith v. Mossinghoff*, 671 F.2d 533, 538 (D.C. Cir. 1982) case relied upon by Defendant for the proposition that "deciding to work on, or being preoccupied with, other matters that are a priority over a revival petition also does not qualify as unintentional delay" is irrelevant because the test at that time was whether the delay was *unavoidable*. The *unintentional* standard did not come into effect until some 15 years later, and further, the unavoidable standard was abolished by amendment in 2013! *See* 37 C.F.R. § 1.137. Plaintiff has already explained, at length, the circumstances of the unintentional abandonment of the Application, and demonstrated how they constitute excusable neglect.

     Relatedly, Defendant relies heavily on *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc*., No. 2:14-CV-267-RWS, --- F.Supp.3d ---, 2017 WL 106018 (N.D. Ga. Jan. 11, 2017) throughout its Motion for the proposition that Lockhart's negligence can be imputed to Sauder. Like Defendant's other cases, however, *3D Medical Imaging* is factually inapposite and actually supports Plaintiff's position. There, the original patent-holder himself decided to allow its patent to expire by declining to pay the 11.5-year maintenance fee. He thereafter transferred all rights in the patent (among others in the portfolio) to another entity through bankruptcy. The new owner thereafter sought to revive the patent at issue by certifying that the acts of his predecessor were unintentional, but testimony showed that he made no investigation of the circumstances by which the original owner declined to pay the maintenance fee. *Id.* Distinguishing *Network Signatures,*

the Northern District of Georgia concluded that inequitable conduct had occurred. *Id.*

The facts of this case are entirely inapposite to those of *3D Med. Imaging Sys*. As Plaintiff explained in its Motion, the undisputed evidence is that Sauder was not informed of the actual abandonment for months after it had occurred <u>and</u> was remedied by Lockhart's Petition to Revive. Lockhart concealed the abandonment from Sauder by personally paying the revival fee with his own credit card and resumed prosecution of the Application as soon as he was medically able. At no point did Sauder direct Lockhart to abandon the Application. These facts are solidly proven and Defendant's distortions are to no avail. But irrespective of what Sauder knew or did not know, Lockhart had the ***personal knowledge*** necessary to certify that the abandonment was unintentional No investigation was needed. This is the distinguishing factor between *Network Signatures* and *3D Med. Imaging Sys*., which puts the case at bar within *Network Signatures* and its progeny.

Additionally, Sauder cited numerous cases in its Motion for the proposition that "[m]istake or negligence, even gross negligence, does not support a ruling of inequitable conduct." Plaintiff's Motion at 8 (*quoting Aspex,* 605 F.3d at 1316; *citing In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 522 (Fed. Cir. 2012)). Accordingly, Plaintiff explained that to "establish the requisite deceptive intent, the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." Plaintiff's Motion at 7 (*quoting Astrazeneca Pharm. LP v. Teva Pharm. USA, Inc.*, 583 F.3d 766, 776 (Fed. Cir. 2009)). Based on the factual record presented before the Court, the conclusion here is obvious; the sum total of all of the evidence establishes that any delay in prosecuting the application was not intentional. This Court should grant Plaintiff's Motion.

8

### V. VARNUM'S NEGLIGENCE CANNOT BE IMPUTED TO SAUDER

Plaintiff explained in its Motion that application of the inequitable conduct defense requires the Court to balance the equities of the case before it decides to render the subject patent unenforceable. Plaintiff's Motion at 12-13. Accordingly, Plaintiff explained that upon the facts presented, the equities plainly compel the granting of Plaintiff's Motion. *See* Plaintiff's Motion at 12-13 (analyzing *Aristocrat Techs. v. Int'l Game Tech.*, 2011 WL 10934530 (N.D. Cal. 2011) (judgment for patent holder on issue for inequitable conduct after a bench trial where application had been abandoned due to attorney negligence)).

Just as it would be inequitable to apply the doctrine of inequitable conduct against Sauder, this Court should not impute the knowledge of Lockhart's failure to meet relevant deadlines and subsequent concealment of the abandonment to Sauder without evidence that Sauder knew about them and was knowingly complicit in the failure. Under either Ohio or Michigan law (as Varnum is a Michigan-based firm, and Sauder is an Ohio-based company), both states are clear that when an agent acts adversely to a principal, or engages in fraud, that agent's knowledge is not imputed to the principal. *See New Properties, Inc. v. George D. Newpower, Jr., Inc.*, 762 N.W.2d 178, 188 (Mich. Ct. App. 2009); *Pellenz v. Knights of Columbus*, 147 Mich. App. 438, 442, 382 N.W.2d 793, 795 (1985); *In re Nat'l Century Fin. Enterprises, Inc.*, 783 F. Supp. 2d 1003, 1015 (S.D. Ohio 2011); *Unencumbered Assets, Trust v. Great Am. Ins. Co.*, 817 F. Supp. 2d 1014, 1034 (S.D. Ohio 2011).

Here, Lockhart failed to recognize the correct date to respond to the Office Action, and the Application was abandoned. Thereafter, Varnum received a notice of abandonment from the USPTO, but never notified Sauder that the Application was abandoned. Plaintiff's Motion at 2 (*citing* Lockhart Declaration at ¶ 9). Sauder never instructed Varnum to abandon the Application

9

Plaintiff's Motion at 3 (*citing* Warncke Dep. at 139-140; Lockhart Dep. at 120). Thereafter, Lockhart filed (without Sauder's knowledge) a revival petition, and paid the $1,620 fee out of his own pocket. Plaintiff's Motion at 4 (*citing* Lockhart Decl. at ¶ 18). Imputing any knowledge to Sauder of the applicable deadlines or the Application abandonment under these circumstances is unwarranted.

## VI. CONCLUSION

Fairly considered, the facts, equities, and laws are on Sauder's side. Sauder therefore requests that this Court grant its Motion and enter summary judgment dismissing Defendant's inequitable conduct defense with prejudice.

Respectfully submitted,

Dated: April 17, 2017

**Young Basile Hanlon & MacFarlane, PC**

By:*/s/ Thomas N. Young*
Thomas N. Young (P22656)
Michael M. Jacob (P15391)
3001 W. Big Beaver Road, Suite 624
Troy, Michigan 48084
Tel: (248) 649-3333 / Fax: (248) 649-3338
young@youngbasile.com
jacob@youngbasile.com

*Attorneys for Plaintiff*

**CERTIFICATION OF COUNSEL**

Pursuant to L.R. 7.1(f) the undersigned counsel hereby certifies that the foregoing Brief in Response to Defendant's Motion for Partial Summary Judgment complies with the page limitations set forth by this Court in DE 132.

By: */s/ Thomas N. Young*
Thomas N. Young (P22656)

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on April 17, 2017, he caused the foregoing to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system and electronic mail.

By: */s/ Thomas N. Young*
Thomas N. Young (P22656)